UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ILDIKO CHECH           ) | CASE NO.  5:14CV810 |
|                        ) | |
| Plaintiff              ) | MAGISTRATE JUDGE |
|                        ) | GEORGE J. LIMBERT |
| v.                     ) | |
|                        ) | **MEMORANDUM AND OPINION** |
| CAROLYN W. COLVIN,     ) | |
| ACTING COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION ) | |
|                        ) | |
|                        ) | |
| Defendant.             ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Ildiko Chech Disability Insurance Benefits (DIB).  The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his February 26, 2013 decision in finding that Plaintiff was not disabled because she could perform her past relevant work as a medical assistant (Tr. 84-90).  The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

## I. PROCEDURAL HISTORY

Plaintiff, Ildiko Chech, filed her application for DIB on June 17, 2011, alleging she became disabled on June 1, 2002, but amended her onset date at the hearing to January 24, 2007 (Tr. 100-101, 216-222).  Plaintiff's application was denied initially and on reconsideration (Tr. 171-173, 179-181). Plaintiff requested a hearing before an ALJ, and, on February 12, 2013, a hearing was held where Plaintiff appeared with counsel and testified before an ALJ and Bruce Holderead, a vocational expert

1

(VE), also testified (Tr. 98-126).

On February 26, 2013, the ALJ issued his decision, finding Plaintiff not to be disabled (Tr. 84-90). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-6, 78). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g).

**II.     STATEMENT OF FACTS**

Plaintiff was born on January 24, 1957, which made her fifty years old as of her date last insured (Tr. 216). Plaintiff has a high school education plus training in medical assisting (Tr. 240). Plaintiff has past relevant work as a medical assistant, light per the Dictionary of Occupational Titles, but performed at the heavy level, and skilled (Tr. 121, 240-241, 261).

**III.    SUMMARY OF MEDICAL EVIDENCE**

A December 2003 MRI of Plaintiff's right knee revealed a small joint effusion, without evidence of a meniscus tear, and a bone cyst within the tibial plateau (Tr. 346). Plaintiff's tendons and ligaments were intact (Tr. 346). An x-ray revealed metallic foreign bodies, but no evidence of fracture, and no other bony or soft tissue abnormalities (Tr. 348).

Plaintiff received regular treatment from Jeannette Ann Moleski, D.O. between December 2004 and March 2008 (Tr. 266-322, 493-495). In November 2004, Dr. Moleski noted that Plaintiff was wearing a knee brace (Tr. 494). In May 2005, she noted that Plaintiff's right knee pain was "better" (Tr. 318). Plaintiff had a normal gait and station (Tr. 319). In April 2006, Dr. Moleski reported that Plaintiff had a planned knee replacement (Tr. 314). However, by September 2006,

although Dr. Moleski noted that Plaintiff's knee pain was unchanged, she did not identify "joint pain" as a muscular symptom, and did not again do so until September 2007 (Tr. 277, 280, 284, 287, 290, 293, 298). In her treatment notes throughout this period, Dr. Moleski uniformly reported that Plaintiff had a normal gait and station (Tr. 268, 272, 275, 278, 281, 288, 291, 294, 299, 302, 305, 309). Dr. Moleski never prescribed injections, physical therapy, or narcotic painkillers for Plaintiff's knee pain, did not refer her to any pain management specialist, and did not indicate that Plaintiff's knee issues required any specific functional restrictions (Tr. 266-322, 493-495).

The record also contains treatment records from Richard M. Garwood, Do., beginning in January 2007 (Tr. 546-570). However, treatment records from Dr. Garwood from January 2007 through the end of 2008 did not document any complaints of knee pain (Tr. 557-569). Dr. Garwood did not prescribe any injections, physical therapy, or narcotic painkillers, due to knee pain during that period, did not refer Plaintiff to any pain management physician, and did not assess any knee-related specific functional restrictions (Tr. 557-569).

The record indicates that Plaintiff eventually underwent knee replacement surgery in June 2009, a year and a half after her date last insured (Tr. 84, 556). That surgery required two revisions (Tr. 547, 549). After the first revision, Plaintiff reportedly experienced relief until she injured her knee by slipping on the steps while getting into her pool (Tr. 591, 593-594). Her surgeon opined that this injury might have contributed to a loosening in the femoral component (Tr. 597).

W. Jerry McCloud, M.D. reviewed the record for the state disability determination service on September 11, 2011 (Tr. 158). Dr. McCloud concluded that there was no evidence of any severe impairment during the eligible time period prior to Plaintiff's date last insured (Tr. 158). On December 27, 2011, Edmond Gardner, M.D. affirmed Dr. McCloud's assessment (Tr. 165).

3

## IV. SUMMARY OF TESTIMONY

At the hearing, Plaintiff testified that there were various reasons that she stopped working, including the problems with her right knee (Tr. 103-104). She was told that she needed to be careful because she would need a knee replacement in the future, and she tried to stay off of it as much as she could (Tr. 104). Plaintiff stated that she was taking Tylenol for the pain up to six a day, and even though she knew it was a large dose (Tr. 106). She could only shop at one store at a time (Tr. 106). Plaintiff stated she could kneel on her knee, and had to climb one step at a time (Tr. 106). The first knee surgery was in 2009 (Tr. 107-108). Prior to the surgery, Plaintiff testified that the pain was bad and constant (Tr. 108). She would be able to do some cleaning for short periods of time, and then needed to rest (Tr. 109). She would put ice on her knee to try to reduce pain (Tr. 109). Plaintiff was using a knee brace around the time period of 2006-2007 all the time every day, and the brace went from her calf up to the upper thigh, and was strapped across the upper thigh (Tr. 114). Any time she did any activity, she would have to take the six Tylenol tablets (Tr. 115). Prior to the date last insured, she would ice her knees at least thirty minutes at a time, and she would stay off of her knee in order to attempt to decrease the pain (Tr. 116). Plaintiff would have difficulty even going up three steps because of the pain (Tr. 117). Plaintiff stated that she did not want to take prescription pain pills prior to her date last insured because she did not want to take pills (Tr. 119-120).

Thereafter, the vocational expert testified about a person such as Plaintiff having past work experience as a medical assistant, which is described as light work per the DOT, but that was actually performed by her at the heavy level.

The ALJ requested that the expert consider an individual, same age and education, with the same work history as Plaintiff. Plaintiff was born in January 1957, and has a high school diploma. The individual in hypothetical number one can lift, carry, push, and pull twenty pounds occasionally

4

and ten pounds frequently. This person can sit for six hours, and can stand and walk for six hours, in a normal workday. This person cannot climb ladders, ropes, or scaffolds, and can occasionally climb ramps and stairs. This person can occasionally kneel/crouch, kneel and crouch, but cannot crawl. This person cannot operate foot controls bilaterally. This person must avoid workplace hazards, such as exposure to dangerous moving machinery or work at unprotected heights.

The vocational expert stated that, based on his experience, education, and training, in his opinion, such a person could perform the medical assistant job as it is performed per the DOT.

In a second hypothetical, the ALJ further restricted Plaintiff to no kneeling, with the other limitations in place. The vocational expert opined that such a person could perform the job as it is performed in the DOT.

For the third hypothetical, the ALJ added a restriction of no kneeling, and also a sit/stand option that allows the individual to change positions from sitting to standing and vice versa, every thirty minutes. The vocational expert responded that there were no guarantees the Plaintiff could do the job (Tr. 121-125).

## V.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c)and 416.920(c)(1992);

3. If an individual is not working and is suffering from a severe

5

>  impairment which meets the duration requirement, *see* Sections 20
>  C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent
>  to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1,
>  a finding of disabled will be made without consideration of vocational
>  factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

## VI. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. Section 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision,

even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## **VII.  ANALYSIS**

Plaintiff raises the following two issues:

A.  WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT FOR LIGHT WORK AS DETERMINED BY THE ADMINISTRATIVE LAW JUDGE.

B.  WHETHER THE ADMINISTRATIVE LAW JUDGE ERRED IN FINDING THE PLAINTIFF'S ALLEGATIONS OF HER SYMPTOMS NOT ENTIRELY CREDIBLE.

In the opinion of the undersigned, the ALJ incorporated significant restrictions into his assessment of Plaintiff's RFC that accommodated the limitations from Plaintiff's right knee degenerative joint disease prior to her date last insured. The ALJ accommodated Plaintiff's knee impairment by restricting Plaintiff to light work with no climbing of ladders, ropes, or scaffolds; only occasional climbing of ramps and stairs; no operation of foot controls; only occasional kneeling, crouching, and crawling; and no workplace hazards (Tr. 87).

Furthermore, the ALJ noted that Plaintiff received only minimal and conservative treatment for her right knee prior to her date last insured (Tr. 88). While the ALJ acknowledged that Plaintiff

took Tylenol and wore a knee brace, the ALJ also noted that Plaintiff was not seeing any pain management physician during the period, and was not taking any narcotic painkillers (Tr. 88). The ALJ further indicated that the record did not document any physical therapy or any need for Plaintiff to use a cane prior to the date last insured (Tr. 88). While the ALJ acknowledged that the 2003 MRI revealed joint effusion and a bone cyst, he concluded that it did not support limitations to the extent alleged by Plaintiff, since there was no evidence of any meniscus tear, and Plaintiff's tendons and ligaments were intact (Tr. 88, 346).

The ALJ correctly concluded that the treatment notes from the physicians who treated Plaintiff during the period at issue – Drs. Moleski and Garwood – did not support Plaintiff's allegations of disabling limitations (Tr. 88). Neither Dr. Moleski nor Dr. Garwood prescribed any painkillers for Plaintiff's knee, or suggested any injections or physical therapy (Tr. 88, Tr. 266-322, 493-495, 557-569). While Plaintiff complained of knee pain to Dr. Moleski, the Doctor repeatedly documented that Plaintiff had a normal gait and station (Tr. 88, 268, 272, 275, 278, 281, 288, 291, 294, 299, 302, 305, 309). Nevertheless, the ALJ discounted the medical source opinions of Drs. McCloud and Gardner that she had no severe impairments during the relevant period prior to her date last insured (Tr. 89, 158, 165).

Based upon substantial evidence, the ALJ correctly concluded that Plaintiff's allegations of limitations beyond those he included in his assessment of her RFC were not credible (Tr. 88). The ALJ's consideration of the objective medical evidence from Dr. Moleski and Dr. Garwood, of Plaintiff's conservative treatment with only Tylenol as medication, and of Plaintiff's minimal treatment other than medication during the relevant period, were all legitimate considerations under the regulations. *See* 20 C.F.R. Section 404.1529(c)(2), (c)(3)(iv), and (c)(3)(v). The Courts give great deference to an ALJ's credibility assessment, particularly because the ALJ has the opportunity to

observe the demeanor of a witness while testifying. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

In her brief, Plaintiff does not cite any evidence that any medical source assessed her with any functional restriction beyond the ALJ's RFC assessment prior to her date last insured (Pl. Br. 6-11). Plaintiff argues that the ALJ should have found her capable of only sedentary work because (1) the MRI and x-ray evidence from 2003 revealed abnormalities; (2) she wore a knee brace; (3) she related to Dr. Moleski in a 2006 treatment note that she planned to undergo knee replacement surgery; (4) she eventually underwent surgery; (5) she took Tylenol, Vitamin D, and Omega 3 Fatty Acids to help with pain; and (6) she testified that she had further functional limitations (Pl. Br. 7-10).

However, Plaintiff does not challenge the primary rationale that the ALJ used to support his RFC assessment – that she received only conservative treatment for her knee impairment during the relevant period, as her treating physicians did not prescribe physical therapy or narcotic painkillers or refer her for pain management treatment, and consistently noted that her gait and station were normal. In regard to abnormalities in the 2003 MRI results and Plaintiff's use of a knee brace and Tylenol, the ALJ considered these factors in his decision, and concluded that the 2003 MRI did not support further limitations because there was no evidence of any meniscus tear and Plaintiff's tendons and ligaments were intact (Tr. 88). While the ALJ gave less weight to the opinions of Drs. McCloud and Gardner that Plaintiff had no severe impairment during the relevant period, nevertheless, those opinions support the ALJ's interpretation of the MRI results as not indicative of further limitations. Plaintiff has not met her burden of showing that substantial evidence did not support the ALJ's decision. There is no evidence in the record to contradict the ALJ's conclusion that the 2003 diagnostic test results or her use of a knee brace required additional functional restrictions beyond those the ALJ included in assessing her RFC (Pl. Br. 7-8).

While Plaintiff indicates that she eventually underwent knee replacement surgery eighteen months after the expiration of her date last insured, and that she reported plans for eventual knee replacement surgery to Dr. Moleski in 2006 (Tr. 314), this indicates that Plaintiff's knee impairment did not become so severe as to warrant undergoing surgery until after her date last insured.  Hence, Plaintiff's argument is not supported by the fact that Dr. Moleski consistently reported that she had a normal gait and station and never prescribed injections, physical therapy, or narcotic painkillers (Tr. 266-322, 493-495).

Finally, Plaintiff's argument that the ALJ was required to accept her subjective allegations of limitations is not supported by Sixth Circuit decisions, which provide that an ALJ is only required to accept allegations that he finds to be credible.  *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).  The ALJ also considered Plaintiff's difficulties with daily activities, including her testimony that she was unable to kneel or walk for extended periods (Tr. 88).

However, based upon substantial evidence, the ALJ also found that Plaintiff's use of only non-narcotic, over-the-counter medications was inconsistent with her allegation of disabling limitations.  *See Mullins v. Sec'y of Health and Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987).

In conclusion, Plaintiff has not met her burden of establishing that her knee impairment was disabling prior to her date last insured, which was eighteen months before her first knee surgery (Tr. 107-108).

## IX.   **CONCLUSION**

Based upon a review of the  record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform her past relevant work, and, therefore, was not disabled.  Hence, she is not

entitled to DIB.


Dated: March 5, 2015                             */s/George J. Limbert*
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE